621 F.2d 1046
 24 Wage & Hour Cas. (BN 696, 88 Lab.Cas. P 33,905,
27 Cont.Cas.Fed. (CCH) 80,391
 MIDWEST MAINTENANCE & CONSTRUCTION CO., INC., a corporation
and C. W. Curtis and Cecile Curtis, Plaintiffs-Appellants,
v.
Xavier M. VELA, Administrator, Wage and Hour Division
(Successor to Ronald J. James, Resigned), and Ray
Marshall, Secretary of Labor, United
States Department of Labor,
Defendants-Appellees.
 No. 78-1694.
 United States Court of Appeals,
Tenth Circuit.
 Argued Jan. 23, 1980.
Decided May 1, 1980.
 
 Charles W. Ellis, Oklahoma City, Okl. (Ellis, Frates & Shotts, Oklahoma City, Okl., on the briefs), for plaintiffs-appellants.
 Gail V. Coleman, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Ronald G. Whiting, Associate Sol., George E. Rivers, and Jack Diamond, Attys., U. S. Dept. of Labor, Washington, D. C., James E. White, Acting Regional Sol., Dallas, Tex., on the brief), for defendants-appellees.
 Before McWILLIAMS, BREITENSTEIN and SEYMOUR, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This action seeks review of decisions of the United States Department of Labor under the Service Contract Act of 1965, as amended, 41 U.S.C. § 351 et seq. After an administrative hearing, defendant-appellee James, as Administrator of the Wage and Hour Division, held that plaintiff-appellant Midwest Maintenance & Construction Co. had underpaid its employees working on a federal service contract by over $61,000. Defendant-appellee Marshall, as Secretary of Labor, ruled that Midwest was ineligible to bid on government contracts for three years. The district court sustained the departmental actions. We reverse.
 
 
 2
 Midwest is an Oklahoma corporation with its principal office in Oklahoma City. It performs contracts for repair and maintenance of government-owned equipment. On September 28, 1973, pursuant to a cross-service agreement with the United States Air Force, the General Services Administration, GSA, issued invitations to bid for the maintenance, repair, and overhaul of various types of equipment in ten service areas.
 
 
 3
 Midwest bid on, and was awarded the contract for, the repair and maintenance of four types of equipment. We are concerned with one designated as "Group G." The invitation to bid included a copy of the contract and nine wage determinations. One of these, No. 68-84 (Rev. 8), covered Bexar and Guadalupe counties, Texas. An amendment to the invitation included a successor wage determination, designated as No. 72-120 (Rev. 3), which included the same counties. The "Group G" equipment covered by the Midwest contract is known as "yellow iron." Midwest performed the work at Poteet, Atascosa County, Texas. No wage determination specifically covered Atascosa County.
 
 
 4
 The Service Contract Act, 41 U.S.C. § 351(a)(1) and (2) requires that a contractor such as Midwest pay its employees wages, and furnish them fringe benefits, "as determined by the Secretary, * * * in accordance with prevailing rates (and benefits) for such employees in the locality." Section 351(b)(1) says that no contractor shall pay less than the minimum wage specified under the Fair Labor Standards Act, FLSA, 29 U.S.C. § 206(a)(1). A contractor who violates the Act is placed on a three-year ineligibility list unless the Secretary otherwise recommends because of unusual circumstances. 41 U.S.C. § 354(a).
 
 
 5
 When the contract was about 80 percent performed, a Labor Department investigation disclosed Midwest was paying wages about $1.10 an hour less than the wage scale stated in wage determination No. 72-120 (Rev. 3) but more than the FLSA minimum. The Department requested the Air Force to withhold from payments to Midwest an amount sufficient to cover the alleged underpayments. Efforts to resolve the controversy failed, and the Department filed an administrative complaint against Midwest charging violations of the Service Contract Act. Midwest denied the allegations and contended that the bid and contract contained no wage determination for the locality in which the work was performed. Absent such determination, Midwest says that the FLSA minimum applies and it paid more than the minimum.
 
 
 6
 An Administrative Law Judge, ALJ, conducted an evidentiary hearing. He found that Midwest had arranged to take over a facility at Poteet, Texas for the performance of the "yellow iron" servicing, should it be awarded the contract, and that the work was performed at Poteet. He took judicial notice that Poteet is within 30 miles of San Antonio, which is in Bexar County and that Poteet is in Atascosa County which adjoins Bexar County. He also found that Midwest had paid $1.10 an hour less than the scale for Bexar County. The total underpayments by Midwest amounted to $61,337.24.
 
 
 7
 The ALJ did not directly decide the claim of Midwest that the wages were controlled by those in Atascosa County where the work was performed. Instead he held:
 
 
 8
 "Proceeding, however, on the assumption that Respondents' (Midwest's) interpretation of the applicable law and regulations was correct, the record shows that Respondents took no steps to remedy the situation until long after the award had been made and the contract largely performed. They thus acquired an unconscionable advantage over other bidders, and defeated the purpose of the Act. By failing to protest the wage determinations prior to the making of the award, they must be deemed to have relinquished any right to depart from the requirements of the Wage Determinations promulgated by the Secretary."
 
 
 9
 With regard to the ineligibility sanction, the ALJ recommended that it not be applied. He pointed out that Midwest maintained adequate records, made them available to the Compliance Officer, cooperated in the investigation, had performed many government contracts with no substantial violations and that Midwest's liability "turned on bona fide legal issues of doubtful certainty." These legal issues relate to the meaning of the Service Contract Act and of the GSA-Midwest contract. The issues were raised by Midwest and not decided by the ALJ.
 
 
 10
 The Administrator upheld the ALJ's decision on relinquishment. The Administrator's action, although not entirely clear to us, can be read as rejecting Midwest's claim that place of performance controls and holding that, when the place of performance is unknown, "locality" is the location of the contracting facility. On the ineligibility sanction, the Administrator disagreed with the ALJ, saying that Midwest interpreted the contract unilaterally at its peril and did not manifest an intent to comply with the Act. He concluded that the case did not involve "unusual circumstances" relieving Midwest from the ineligible list sanction. On the basis of the Administrator's decision, the Secretary imposed the ineligibility sanction.
 
 
 11
 The district court upheld the ALJ and the Administrator on "relinquishment" and said that it had no jurisdiction to review the Secretary's decision on the sanction.
 
 
 12
 Except for the sanction issue, the scope of judicial review presents no problem. The controlling standards appear in 5 U.S.C. § 706. The only change applicable here is that § 706(2)(E) refers to substantial evidence. The Service Contract Act, 41 U.S.C. § 353(a), provides that Sections 4 and 5 of the Walsh Healey Act, 41 U.S.C. §§ 38 and 39, govern. Section 39 provides that the Secretary's findings shall be conclusive if supported by the preponderance of the evidence. See United States v. Deluxe Cleaners & Laundry, Inc., 4 Cir., 511 F.2d 926, 927.
 
 
 13
 We do not know what is meant by "relinquishment." Perhaps waiver is intended. Waiver is the intentional relinquishment of a known right or privilege. Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255. Silence is not a waiver unless there is a duty or obligation to speak. Dalton v. LeBlanc, 10 Cir., 350 F.2d 95, 98-99. Midwest had the right, but not the obligation, to seek clarification of the bid invitation and contract. No evidence in the record even intimates that Midwest intended to forsake, abandon or renounce its position on locality. Midwest kept adequate and accurate wage records and was prepared to cooperate with the Department and defend its position.
 
 
 14
 Equitable estoppel is closely akin to waiver. Estoppel arises when a "party, by its words or actions, misrepresents a fact, and the other party reasonably relies upon such representations to its detriment." United Services Automobile Association v. Royal-Globe Insurance Co., 10 Cir., 511 F.2d 1094, 1097. Nothing in the record shows that Midwest made any misrepresentation of the basis for its bid.
 
 
 15
 The statements by the ALJ and the Administrator that Midwest took an "unconscionable" advantage over competing bidders are without record support. The record does not disclose what bids were received by GSA or the amount of those bids. All we know is that GSA awarded the contract to Midwest. We have no way of knowing whether the advantage, if any, was unfair. The ALJ made the assumption that Midwest's interpretation of the applicable law and regulations was correct and then said that Midwest "relinquished" its rights. The government suggests that Midwest should have sought a hearing before the Secretary under 41 U.S.C. § 353(c). The difficulty is that § 353(c) applies to a successor contract and we are concerned with an original contract. We reject the "relinquishment" ruling of the ALJ and the Administrator as without either legal or factual support.
 
 
 16
 This decision would end the matter if it were not for the alternate position apparently taken by the Administrator, i. e. the rejection of the Midwest claim that place of performance controls and his statements that "locality" is the location of the contracting facility. These issues require consideration of the statute and the contract.
 
 
 17
 The statute does not define "locality." To sustain its position each party refers to documents and reports which are not in the record and which are not available to us. We agree with the government statement, Br. p. 27, that:
 
 
 18
 "* * * the legislative history of the original Act is silent as to the proper 'locality' to be used when the place or places of performance of the contract services are unknown at the time that the bids are invited or proposals are requested."
 
 
 19
 The only regulation of the Secretary referring to "locality" as used in the Act is 29 C.F.R. § 4.163. It says that:
 
 
 20
 "(T)he term 'locality' has reference to geographic space. However, it has an elastic and variable meaning * * *. It is, accordingly, not possible to devise a precise single formula which would define the exact geographic limits of a 'locality' that would be relevant or appropriate for the determination of prevailing wage rates * * *. The locality within which a wage * * * determination is applicable is, therefore, defined in each such determination upon the basis of all the facts and circumstances pertaining to that determination."
 
 
 21
 The regulation is not helpful. In its brief the government says, Br. p. 27:
 
 
 22
 "* * * at the time when bids were invited and when predetermined wage rates and fringe benefits had to be provided for the contract and for the bid specification there was no information with respect to the place or places where the service employees would be performing the work."
 
 
 23
 We are aware of no appellate decision considering the meaning of "locality" as that term appears in the Act. Midwest relies on Descomp, Inc. v. Sampson, D.Del., 377 F.Supp. 254, which held that the employees involved were not service employees within the meaning of the Act. Id. at 264. As an alternative ground of decision, the court held that "locality" as used in the Act means place of performance. Id.
 
 
 24
 In Southern Packaging and Storage Co. v. United States, D.S.Car., 458 F.Supp. 726, the court rejected the contention of the Secretary of Labor that "locality" as used in the Service Contract Act included the entire United States. Id. at 732-733. The court quoted Descomp with approval and said, Id. at 735, that when the area of performance cannot be determined before bid solicitation each bidder should base his bid on the prevailing wage rate as determined by the Department "in his own specific locality."
 
 
 25
 The government brief does not attack the Descomp and Southern Packaging decisions. Like the ALJ and the Administrator, government counsel dispose of Descomp with the comment that it was decided after the present dispute arose and hence does not excuse Midwest's action. We agree with the government that the Service Contract Act, like the Fair Labor Standards Act, is remedial labor legislation which must be liberally construed. See Rutherford Food Corp. v. McComb, 331 U.S. 722, 723, 67 S.Ct. 1473, 91 L.Ed. 1772, but that does not solve the problem.
 
 
 26
 Neither Descomp nor Southern Packaging discuss the government claim, here presented, that the controlling wage scale is that prevailing at the place where the government facility for which the service contract is made is situated. The government contention assumes that in the case at bar the bid invitation and subsequent contract required application of the wage scale where the appropriate government installation is located. This requires consideration of the invitation and the contract.
 
 
 27
 The ALJ and the Administrator did not discuss the specific provisions of the invitation and contract. The Administrator refers to the "location of the contracting facility." The wage determination 72-120 refers to the "federal installation in the above locality." The Administrator apparently equates contracting facility with federal installation. The "contracting facility" is not specified in the contract. The invitations were issued, and the contract made, by GSA in its Fort Worth, Texas office. If that place is determinative, wage determination No. 72-120 (Rev. 3) has no application.
 
 
 28
 The Administrator found that Kelly Air Force Base is the federal installation in Bexar County referred to in wage determination 72-120. The bid invitation refers to "service areas" and includes wage scales for several "localities." Nowhere does the invitation equate service area with locality. The invitation amendment refers to ten service areas and in a table of man-hour requirements lists after "Group G," service areas 6, 7, and 10. Another amendment says that "Group G" will be awarded in service areas 6, 7, and 10 only. Kelly Air Force Base is in or near San Antonio, which is designated as service area 10, but nothing in the invitation mentions the federal installation from which the "yellow iron" will be furnished to the successful bidder.
 
 
 29
 We have searched the record and examined all the record references alluded to by the Administrator and the government brief, and find no direct evidence as to the source of the "yellow iron." That source should have been capable of direct proof. The failure of the agency to make such proof is disturbing. The agency claim that Kelly Air Force Base in Bexar County is either the source of the "yellow iron", or is the contracting facility, is not sustained by a preponderance of the evidence.
 
 
 30
 Nothing is accomplished by turning from the bid invitation to the contract. The miserable administrative record leaves us uncertain as to the actual contract made by GSA and Midwest. Documents in the record contain many handwritten notations, some of which might be pertinent, but the source or authenticity of these notations is not given. Assuming that the contract is comprised of the bid invitation with its many attachments and amendments, the contract is ambiguous in its use of "service area" and "locality" without equating the two, and in its failure to specify either the federal installation, the contracting facility, or some other place as determinative of the applicable wage scale.
 
 
 31
 The government could easily have been specific. It was not. The agency, through the ALJ and Administrator, did not analyze the contract and made no effort to establish from where the equipment to be serviced would be, or was, received. We said in American Petroleum Institute v. E. P. A., 10 Cir., 540 F.2d 1023, 1029, cert. denied 430 U.S. 922, 97 S.Ct. 1340, 51 L.Ed.2d 601:"The grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record. The agency must make plain its course of inquiry, its analysis, and its reasoning."
 
 
 32
 See also du Pont de Nemours & Co. v. Train, 4 Cir., 541 F.2d 1018, 1026, modified 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 and Federal Trade Commission v. Sperry and Hutchinson Co., 405 U.S. 233, 249, 92 S.Ct. 898, 907, 31 L.Ed.2d 170.
 
 
 33
 On the record presented we decline to decide whether place of performance or place of the federal installation furnishing the equipment to be serviced controls. The agency has not articulated any rational basis for its decisions. Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207. "The orderly functioning of the process of review requires that the grounds upon which the administrative agency acted must be clearly disclosed and adequately sustained." SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626. In the case at bar, they are not.
 
 
 34
 We have rejected the "relinquishment" theory on which the ALJ, the Administrator, and the district court acted. Their decisions are severally set aside and held for naught. Because of the noted administrative deficiencies and inadequate record, we do not reach any question of statutory construction.
 
 
 35
 The remaining question relates to the Secretary's imposition of the ineligibility sanction. The district court held that it had no jurisdiction to consider this action. We disagree. Section 5 of the 1965 act provided for distribution by the Comptroller General of a list of Act violators, and said, 79 Stat. 1034, 1035, that "unless the Secretary otherwise recommends", no contract shall be awarded a person or firm on the list. The section was amended in 1972 to provide that "(w)here the Secretary does not otherwise recommend because of unusual circumstances" a violator's name shall be forwarded to the Comptroller General. 86 Stat. 789, 790, 41 U.S.C. § 354(a). The Secretary based his decision that there are no unusual circumstances on the decision of the Administrator. Admittedly, the Secretary has a wide discretion. The 1972 amendment did not restrict judicial review. The exercise of discretion may be reviewed when there is law to apply. See Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136. Here there is law to apply. We have rejected the Administrator's decision on which the Secretary acted. Absent a violation, the sanction may not be applied. Accordingly, the imposition of the sanction is set aside and held for naught.
 
 
 36
 We reverse and remand the case to the district court with directions to remand it to the Department of Labor for such further proceedings, consistent with this opinion, as may be appropriate.