**FEDERAL FOOD SERVICE, INC.,**
**Harold E. Gelber, Appellants,**

v.

**The Honorable Raymond J. DONOVAN,**
**Secretary of Labor, et al.**

No. 80–1019.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 15, 1980.
Decided March 20, 1981.

John S. Pachter, Washington, D. C., for appellants.

Thomas C. Hill, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

Before TAMM and MIKVA, Circuit Judges, and PHILIP NICHOLS, Jr.,* Judge, United States Court of Claims.

Opinion for the court filed by Judge NICHOLS.

NICHOLS, Judge.

The issue presented in this appeal is whether the district court erred in upholding the Secretary of Labor's decision that appellants were in violation of federal law by underpaying certain employees and that there were no "unusual circumstances" present that justified removal of appellants' names from the list of those ineligible to bid on government contracts. Although we agree that the Secretary's finding of the existence of violations is supported by a preponderance of the evidence, we disagree on his application of the "unusual circumstances" standard and therefore reverse.

This is an appeal from two orders of Judge Penn. On August 1, 1979, Federal Food Service and its president, Harold E. Gelber (appellants) brought this action for preliminary injunction and declaratory judgment against the Secretary of Labor and the Comptroller General (appellees). On December 11, 1979, Judge Penn denied appellants' Motion for Preliminary Injunction. On December 18, 1979, he *sua sponte* granted summary judgment for appellees. Appellants seek review of these two decisions.

Appellants are in the business of furnishing mess attendant services and this case involves contracts awarded to appellants to provide such services at various and widely scattered military installations from July 1, 1973, through June 30, 1975. These contracts were subject to the Service Contract Act of 1965 (Act), *as amended*, 41 U.S.C. §§ 351 *et seq.* Early in 1974, appellee conducted an investigation into the performance of appellants' contract at a facility in Charleston, South Carolina. As a result, appellants paid back wages of $418 to seven employees for hours worked but not recompensed. Additional investigations thereup-

on were launched into other contracts of appellants and additional violations of the Act were discovered. An administrative complaint was filed in November 1976 charging appellants with violations of the minimum wage and fringe benefit requirements of the Act. Appellants denied the charges and also asserted the presence of "unusual circumstances" if violations were found.

After formal hearings, the Administrative Law Judge (ALJ) filed his decision on November 22, 1977, and found that appellants had failed to pay proper amounts of holiday pay at five locations, had failed to pay vacation pay at three locations, and owed back pay at one location. Out of a total alleged deficiency of $8,095.10, the ALJ found appellants responsible for $3,128.33. These underpayments of employes violated the Act, and under § 354 violators are ineligible for award of government contracts for a 3-year period unless the Secretary of Labor recommends otherwise because of the presence of unusual circumstances. There is no provision for any milder sanction. It is the executioner's ax or nothing. The ALJ recommended against unusual circumstances because he found that appellants' past history reflected violations of the Act during several years, and that there were culpable violations which proper management would have precluded.

Appellants appealed to the Administrator of the Wage and Hour Division who affirmed the ALJ and who recommended to the Secretary that appellants be debarred from receiving government contracts under § 354. Appellants filed an application for relief from debarment pursuant to 29 C.F.R. § 612, but the Secretary concurred with the ALJ's decision, and appellants were debarred. The debarment is now in effect and in view of the nature of appellants' business, must have a catastrophic impact upon it.

Appellants thereupon filed their suit for a preliminary injunction and declaratory judgment. After determining that the Secretary's decision was not precluded from judicial review, the district court denied appellants' motions, holding that the Secretary's determination that appellants' names should not be removed from the list of ineligible bidders was not arbitrary nor an abuse of discretion. Appellants bring this appeal requesting a reversal of the district court. The appellees argue that a debarment determination by the Secretary is precluded from judicial review, but if the decision is reviewable, then it was not arbitrary or capricious and was otherwise in accordance with law.

The two issues before this court are whether judicial review is foreclosed, and if there is review, whether the Secretary's decision was arbitrary, capricious, not based on a preponderance of the evidence or otherwise not in accordance with law.

### 1. Judicial Review not Precluded

[1] Appellees argue that this court cannot review the decision of the Secretary because it "is committed to agency discretion by law" and thus not subject to judicial review. See 5 U.S.C. § 701(a)(1), (2). We, however, agree with the district court that the Secretary's decision is reviewable. Whether judicial review is foreclosed requires an analysis of two factors, i. e., whether there is clear and convincing evidence of a legislative intent to restrict access to review, Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), or whether the statutory authority is drawn in such broad terms that in the given case there is no law to apply. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971).

In this case there is no indication that Congress sought to prohibit judicial review. Section 5 of the 1965 act provided for distribution by the Comptroller General of a list of Act violators, and no contract could be awarded to a person or firm on the list unless the Secretary otherwise recommended. The provision now under analysis, § 354, amended that section, and, according to the legislative history, this new provision "limits the Secretary's discretion to relieve violators of the Service Contract Act from the debarment provisions of Section 5(a) to cases where unusual circumstances exist."

S.Rep.No.92–1131, 92d Cong., 2d Sess. 3–4 (1972), U.S.Code Cong. & Admin.News 1972, p. 3534, 3536. Although the amendment limited the Secretary's discretion by restricting its exercise to unusual cases, appellees' citation to the above quote does not present clear and convincing evidence of a legislative intent to restrict access to judicial review. To the contrary, Congress provided that in case of judicial review, the evidentiary standard should be preponderance of the evidence. 41 U.S.C. §§ 39, 353(a). This of course would not extend judicial review to cases where it would otherwise be unavailable, but it does reflect an intent by Congress to leave availability to general law and judicial precedents.

Also, the statute is not drawn in such broad terms that there is no law to apply in this case. The "no law to apply" exception is a very narrow one which the legislative history of the Administrative Procedures Act, 5 U.S.C. § 701 and ff indicates is to be applied only in rare instances. S.Rep.No. 752, 79th Cong., 1st Sess. 26 (1945); *See* Berger, *Administrative Arbitrariness and Judicial Review*, 65 Colum.L.Rev. 55 (1963). The Secretary does not undertake to show that in case of a proven or admitted violation, the question whether or not to debar is confided to his mere whim. He himself has concluded that there is law to apply, and has stated what it is, as we shall presently quote. Our holding that judicial review of the Secretary's decision to debar a contractor under § 354 is not precluded is in accord with the recent decision of the Tenth Circuit. *Midwest Maintenance & Construction Co. v. Vela*, 621 F.2d 1046, 1051 (1980) (reversing same v. *Jones*, 84 CCH Labor Cases ¶ 33,658 (W.D.Okl.1978, not reported in F.Supp.))

### 2. *Review of Secretary's Decision*

The next issue is whether the decision to debar was arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706. Section 5 of the Walsh-Healey Act, 41 U.S.C. § 39, incorporated by Section 4(a) of the Service Contract Act, 41 U.S.C. § 353(a), provides that the Secretary's findings of fact must be supported by a preponderance of the evidence.

In *Washington Moving and Storage Co.*, No. SCA–168, March 12, 1974, the Secretary established the following guidelines by which "unusual circumstances" should be judged:

Whether "unusual circumstances" are present in a case within the meaning of the Act must be determined on the basis of the facts and circumstances of the particular case. Some of the principal factors which must be considered in making this determination are whether there is a history of repeated violations of the Act; the nature, extent, and seriousness of past or present violations; whether the violations were willful, or the circumstances show there was culpable neglect to ascertain whether certain practices were in compliance, or culpable disregard of whether they were or not, or other culpable conduct (such as deliberate falsification of records); whether the respondent's liability turned on bona fide legal issues of doubtful certainty; whether the respondent has demonstrated good faith, cooperation in the resolution of issues, and a desire and intention to comply with the requirements of the Act; and the promptness with which employees were paid the sums determined to be due them. It is clear that the mere payment of sums found due employees after an administrative proceeding, coupled with an assurance of future compliance, is not in itself sufficient to constitute "unusual circumstances" warranting relief from the ineligible list sanction. It is also clear that a history of recurrent violations of identical nature, such as repeated violations of identical minimum wage or recordkeeping provisions, does not permit a finding of "unusual circumstances." * * *

These guidelines provide a rational and lawful approach to a determination of whether "unusual circumstances" exist. The "law to apply" presents the issue whether he has applied his own guidelines correctly in this instance.

In the instant case, after finding appellants were responsible for a deficiency of $3,328.35—an amount less than one-fifth of 1 percent of the contract values and in a labor-intensive business, no doubt almost as

low a ratio compared to total payrolls—the ALJ ostensibly applied the *Washington Moving* guidelines. The ALJ found that there was no evidence the violations were willful or deliberate and that appellants cooperated with the extensive and complex investigation of the case except for one unexplained instance at the Norfolk location. Payments were made fully and promptly even though substantial amounts had to be estimated through no fault of appellants. Previous violations in the past were not substantial and did not result in debarment because of unusual circumstances.

The vital finding which most influenced the ALJ and the district court was that "proper management would have precluded the continuing occurrence of these widespread underpayments." This is an important finding in view of the small ratio of violations to value of contracts (and to total payrolls, presumably) and the absence of consideration—admitted at oral argument—of offsetting overpayments. Large underpayments might be *res ipsa loquitur* of improper management. There are no facts in the record to refute the judicial belief that no rational precautions could reduce violations to absolute zero. In the instant case there was no showing in the record to support the ALJ's findings of what proper management would have accomplished in these premises and it was bald assumption. The ALJ cited to no testimony of management experts or of prevalent business practices to establish what practices appellants should have followed and did not. Certainly, contractors could hire an army of bookkeepers, accountants, and supervisors to insure no underpayments would occur, and perhaps most needful to all, lawyers at each location. Such a practice, however, would elevate the cost of operation to a level to endanger the future of appellants' type of business as a source of employment.

█ We desire to avoid dictum and therefore do not speculate about cases other than the one before us. To state the limits of the rule we rely on is a necessary part of our decision. We hold that where, as here, the ALJ has made an inference of improper management solely on the basis of virtually *de minimus* underpayments, the Secretary must consider the particular circumstances of the business under review—for example, the actual problems it has faced, the precautions normally taken by well-managed companies in the field, the likelihood that it could have avoided its violations with proper management—before implementing the severe debarment provision. If as here he relies on a history of previous violations to support debarment, he must apply the standards of reasonable management to them as well. Of course, if the ALJ has made these findings on the record, the Secretary need not make an independent investigation. The very absence of any sanction other than the catastrophic one of three years debarment supports the legislative history that use of debarment against innocent and petty violations was not intended. It would be interesting to know what percentage of Federal income tax returns are found on audit to be wholly free of error and in what percentage of those not so free are negligence or fraud penalties assessed.

█ In reviewing debarments under § 354, we do not suggest that a "pure heart" and a lack of willfulness are sufficient to show unusual circumstances. The Secretary was accorded broad discretion by Congress. However, when findings are made they must respect the guidelines by which the Secretary exercises his discretion. In this case there were several factors favorable to the appellants, and absent evidentiary support for the finding of negligence in use of improper management techniques, appellants' debarment is arbitrary because it did not result from a reasonable application of the Secretary's guidelines. 41 U.S.C. §§ 39, 353(a). Therefore, the decision of the district court denying appellants' motions for an injunction and declaratory relief is reversed. The cause is remanded to the district court with directions to vacate the debarment. Leave may be granted to the Secretary, however, to reinstate appellants' names on the list of debarred bidders upon reopening the record and making satisfactory findings consistent with this opinion.

REVERSED AND REMANDED.