Leonard F. NELSON, Plaintiff-Appellant,

v.

INTERIOR BOARD OF LAND APPEALS, etc., et al., Defendants-Appellees,

and

Cecil D. Andrus, Secretary of the Interior, etc., et al., Defendants.

No. 77–3523.

United States Court of Appeals, Ninth Circuit.

June 12, 1979.

Stephen M. Ellis (argued), Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, Alaska, for plaintiff-appellant.

James W. Moorman, Asst. Atty. Gen., Robert L. Klarquist, Atty., Appellate Section, Land and Natural Resources Div., U. S. Dept. of Justice (argued), Washington, D.C., for defendants-appellees.

Before DUNIWAY, TRASK and SNEED, Circuit Judges.

DUNIWAY, Circuit Judge:

This is the second appeal in this case. Our first decision is reported in *Nelson v. Kleppe*, 9 Cir., 1976, 529 F.2d 164. There, we held that a decision by the Interior Board of Land Appeals of the United States Department of the Interior was erroneous. The Board, overruling a decision of a hearing examiner, had held that Nelson did not have a habitable house on the homestead property when he filed his application for a patent. We reversed the decision of the district court, which had upheld the decision of the Board, and remanded the case to the district court for further proceedings.

The district court in turn remanded the matter to the Board of Land Appeals "for a final determination of all questions remaining concerning the issuance of [this] patent."[1] On January 16, 1977, the Board handed down its second decision, 28 I.B.L.A. 314. It held that the remaining questions to be decided were whether Nelson had cultivated at least one-eighth of the homestead acreage for at least one year before filing final proof, whether his attempt at cultivation was made in good faith, and whether he had established and maintained his residence on the homestead to the exclusion of one elsewhere.

The hearing examiner had held that Nelson had met both the cultivation requirements and the residence requirements. The Board reversed both of these holdings, in a two to one decision. As to the residence requirement, it held that Nelson had not entered upon the property with a bona fide intention to make it his home. As to the cultivation requirements, it held that while the amount of acreage cultivated was sufficient, the cultivation was not done in good faith seeking to establish a profitable agricultural operation on the entry.

Nelson petitioned the district court for review of the Board's decision, and the Secretary moved for a summary judgment. The district court concluded that the Board's decision that Nelson had not met the cultivation requirements was in error, but that the Board's determination that Nelson had not met the residence requirement was correct. Summary judgment was entered to that effect. Nelson appealed and that appeal is now before us. The Secretary also appealed, presumably for the purpose of attacking the portion of the

---

1. Before the district court, Nelson argued that, after our remand, there was nothing left for the district court to do except to order the Secretary to issue the patent. On this appeal, Nelson does not renew that argument.

judgment reversing the Board's determination that Nelson had failed to comply with the cultivation requirement. However, on motion of the Secretary for voluntary dismissal, that appeal was dismissed on June 16, 1978, our No. 78–1049.

Accordingly, the only question before us is whether the portion of the district court's judgment upholding the Board's determination that Nelson failed to comply with the residence requirement of the homestead law should be reversed. It is our conclusion, upon review of the whole record, that the decision of the Board on this question is not supported by substantial evidence, 5 U.S.C. § 706(2)(E). As before, "[w]e confine our decision to the case of the veteran." (529 F.2d at 168), who is the beneficiary of special provisions of the law relaxing certain of the requirements for a valid homestead.

In reversing the decision of the hearing examiner, the Board relied almost entirely upon one fact, namely, that when Nelson built his house on the homestead property and moved into that house with his wife and children, he leased the house that he owned in Anchorage for a period of time corresponding very closely to the seven-month minimum time during which the law required him to reside upon the property in order to obtain a patent. This, together with the fact that at the end of the seven months Nelson and his family moved back to the Anchorage house, persuaded the Board that, contrary to the hearing examiner's findings, Nelson did not have the required bona fide intent to make the homestead his home when he moved onto the homestead property.

The difficulty with the finding of the Board, which was sustained by the district court, is that it disregards all of the other evidence in the record which points very strongly to the conclusion that Nelson did intend in good faith to make the property his home when he moved onto the property.

The hearing examiner decided that the fact that Nelson leased his Anchorage home did not show that Nelson did not intend to make the homestead his home. The examiner first described in detail the almost incredible difficulties that Nelson faced and overcame in order to occupy the homestead and to cultivate it, all of which pointed to Nelson's bona fides. The examiner then continued:

> The Contestee testified that he fully intended to live on the homestead and that he attempted to sell his Sand Lake house but because of the access problem resulting from the Smith's refusal to permit crossing of the corner of their property, the inadequacy of the house, and the lack of sanitary facilities, he decided to move back to Anchorage in July 1964 on a temporary basis (Tr. 678, 679, 698). He also testified that he has every intention of returning to the entry and building a new house at another location as soon as he resolves the access problem (Tr. 698, 733, 734).
>
> Although his explanation is reasonable, it might be suspect as a self-serving statement were it not for the fact that while spending substantial sums in developing the homestead the Contestee did not meet the mortgage payments on his Sand Lake house. Financial limitations forced him to choose between the homestead and Sand Lake. He sacrificed Sand Lake! I, therefore, credit his explanation and find that he did meet the residence requirements of the homestead law.

In overturning this finding, both the Board and the district court asserted that it does not rest upon a determination as to Nelson's credibility, but, instead, rests upon a piece of evidence other than credibility, namely, the fact of Nelson's letting his Anchorage home go for nonpayment of the mortgage on it. This is a misconstruction of the hearing examiner's decision. That decision makes it clear that the examiner relied upon the entire history of Nelson's efforts to establish a home and to cultivate the homestead property and upon Nelson's testimony as to what his intention was, not just upon his failure to preserve his interest in his Anchorage home.

■ While the Board was not required to adopt the findings of the hearing examiner, the findings of the Board, to the extent that they are contrary to those of the hearing examiner, particularly where the hearing examiner's findings rest in substantial part upon his appraisal of the credibility of Nelson, are entitled to less weight than they might otherwise be entitled to.

In this connection the comments of Judge Learned Hand in *NLRB v. James Thompson & Co., Inc.*, 2 Cir., 1953, 208 F.2d 743 at 745–46, are particularly apt.

"Good faith" is one form of credibility; it means that the motive that actuated the conduct in question was in fact what the actor ascribes to it: i. e. that what he gives as his motive was in truth his motive. . . . The difficulty is inherent in any review of the findings of a judicial officer who chooses between discordant versions of witnesses whom he has seen, because the review does not bring up that part of the evidence that may have determined his choice. Over and over again we have refused to upset findings of an examiner that the Board has affirmed, not because we felt satisfied that we should have come out the same way, had we seen the witnesses; but because we felt bound to allow for the possible cogency of the evidence that words do not preserve. We do not see any rational escape from accepting a finding unless we can say that the corroboration of this lost evidence could not have been enough to satisfy any doubts raised by the words;

and it must be owned that few findings will not survive such a test.[2]

■ We find the foregoing language of Judge Hand persuasive here, primarily because practically all of the evidence in the record, except the one fact, the short term lease of Nelson's Anchorage home, points in the direction of Nelson's good faith and supports the hearing examiner's finding that he did act in good faith. We are thus compelled to the conclusion that the Board's finding is not supported by substantial evidence.

The portion of the judgment which affirms the Board's determination that Nelson failed to comply with the residence requirement of the homestead law, and the judgment against Nelson, are reversed. No other issues remain. The case is remanded to the district court with directions to issue a judgment ordering the Secretary to issue a patent to Nelson.

---

2. *See also Universal Camera Corp. v. NLRB*, 1951, 340 U.S. 474, 496–97, 71 S.Ct. 456, 469, 95 L.Ed. 456:

We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is "substantial."
*NLRB v. Interborc Contractors, Inc.*, 2 Cir., 1967, 388 F.2d 495, 499:
But it seems that the Board's supporting evidence, in cases where it rejects the examiner's findings, must be stronger than would be required in cases where the findings are accepted, since in the former cases the supporting evidence must be deemed substantial when measured against the examiner's contrary findings as well as the opposing evidence.