**Guillermo A. SAAVEDRA, individually and doing business as Saagan Moving & Storage Company, Plaintiff-Appellant,**

**v.**

**Raymond DONOVAN, Secretary of Labor, et al., Defendants-Appellees.**

No. 82–4130.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1982.

Decided Feb. 4, 1983.

Jerry K. Cimmet, San Francisco, Cal., for plaintiff-appellant.

John F. Barg, San Francisco, Cal., for defendants-appellees.

Before DUNIWAY, WRIGHT, and CHOY, Circuit Judges:

EUGENE A. WRIGHT, Circuit Judge:

The Service Contract Act of 1965, 41 U.S.C. §§ 351–358 (the Act), mandates minimum wages and fringe benefits for employees engaged in government contract work. Its purpose is to protect employees of government contractors. Before the Act, the federal government had been "subsidizing" substandard levels of compensation by awarding contracts to those who were able to bid low by paying less. *American Federation of Government Employees, Local 1668 v. Dunn*, 561 F.2d 1310, 1312 (9th Cir.1977).

The Act requires the Secretary of Labor (Secretary) to determine wages and benefits by job category and geographic area ("wage determinations"). Contracts subject to the Act must incorporate the appropriate wage determinations. 41 U.S.C. § 351(a), (b).

Plaintiff-appellant Saavedra, dba Saagan Moving and Storage Co., was awarded two government contracts which were subject to the Act. He is not proficient in English and did not fully understand the contracts or even read them thoroughly. He based his bid for the first contract on an irrelevant set of figures occurring early in that document. Being unaware that he had to provide fringe benefits, he failed to do so.

The Department of Labor brought an enforcement proceeding. The Administrative Law Judge (ALJ) concluded that Saavedra was bound by and had violated the wage determination and must recompense the affected employees. But he thought the contracts confusing, sloppy, and rife with mistakes. Provisions that he thought ambiguous as to computation of amounts due he interpreted in Saavedra's favor.

Both parties excepted to the ALJ's decision, which triggered reconsideration by an administrator. He set aside the ALJ's reso-

lutions of ambiguities in Saavedra's favor and chose the Department's methods of computation. The Secretary adopted the administrator's decision.

Saavedra challenged the final decision in district court where summary judgment was granted to the defendants. Saavedra appeals.

## I. Standards of Review

Proceedings to enforce labor standards of the Act are on the record. See 29 C.F.R. §§ 6.10, 6.14. These proceedings are governed generally by the Administrative Procedure Act (APA). See 5 U.S.C. §§ 556, 557, 706.

### A. Review Under the APA

Under the APA's judicial review provisions, a court must set aside agency decisions that are "unsupported by substantial evidence" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. § 706(2)(A), (E).

■ The standard does not change merely because the final decision rejects the ALJ's determinations. Loomis Courier Service, Inc. v. NLRB, 595 F.2d 491, 495 (9th Cir.1979). The decision for court review is that of the agency, here the administrator's decision adopted by the Secretary. The court does not review the ALJ's decision, which is merely part of the record. Penasquitos Village v. NLRB, 565 F.2d 1074, 1076 (9th Cir.1977).

■ But the court must take into account the "whole record." Id.; 5 U.S.C. § 706. Because the ALJ's factual findings are part of that record, contrary agency findings are given less weight than they would otherwise receive. Universal Camera Corp. v. NLRB, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951); Nelson v. Interior Board of Land Appeals, 598 F.2d 531, 534 (9th Cir.1979). This principle has greatest force, however, with credibility determinations from demeanor evidence, not at issue here.

### B. Special Standards for Service Contract Proceedings

The APA treatment is modified by laws governing enforcement proceedings under the Act. The Secretary's findings of fact, if supported by a preponderance of the evidence, are conclusive on the courts. 41 U.C.S. §§ 39, 353(a).

■ A regulation binding on the agency provides: "With respect to [the ALJ's] findings of fact, the Administrator shall modify or set aside only those findings that are clearly erroneous." 29 C.F.R. § 6.14. Findings are clearly erroneous if, though there may be evidence to support them, the reviewer has the definite conviction they are mistaken. Thomas v. SS Santa Mercedes, 572 F.2d 1331, 1335 (9th Cir.1978).

## II. Application of the Standards of Review

Because wage determinations are creatures of contract and statute, this case presents a mix of contract law and administrative law. The ALJ followed contract law.

■ Federal law controls when interpreting a government contract. In fashioning federal rules, guidance is gained from general principles for interpreting contracts. United States v. Seckinger, 397 U.S. 203, 209–11, 90 S.Ct. 880, 884–85, 25 L.Ed.2d 224 (1970). Once the ALJ decided that provisions in the contracts affecting the amount Saavedra owed were ambiguous, he applied the "contra proferentem" rule of construction, interpreting ambiguities against the drafter, the government. See id. at 210, 216, 90 S.Ct. at 884, 887.

The administrator concluded the contra proferentem rule was inapposite and applied administrative law. He reasoned that, because Saavedra did not know of these terms when he submitted his bid and had not paid even the lesser amount, he had not relied on his interpretation and was not prejudiced by the imperfections. See, e.g., Dale Ingram, Inc. v. United States, 475 F.2d 1177, 1185 (Ct.Cl.1973).

He agreed with the government's argument that ambiguities should not be inter-

preted against Saavedra's employees, the intended beneficiaries of the provisions and the Act. *Accord,* Restatement (Second) of Contracts § 207 (1979) (when interpreting contracts, a meaning that serves the public interest is preferred).

■ He reasoned that the contracts incorporated the Act, which mandates use of the Secretary's wage determination. Saavedra had a legal duty to conform to the actual wage determination, not just a contractual duty to conform to plausible interpretations of contract provisions embodying the wage determination.

■ Administrative precedent imposed on Saavedra a duty to clarify any uncertainties about the wage determination. The ALJ found these cases were not meaningfully available to the public and in fairness Saavedra could not be held to them. Saavedra's attorney submitted affidavits that he could not find the precedents published.

The administrator set aside the ALJ's finding of unavailability, saying that the Department's decisions were published and properly indexed in regular services. He gave published citations for some relied on.

Moreover, a published regulation specifies that if doubts arise about interpreting the wage determination, the Department should be consulted. 29 C.F.R. § 4.101. Saavedra is charged with such knowledge.

### A. Ambiguities in Method of Computation

The wage determination specifies minimum time an employee must work to qualify for each benefit. It was drafted with a view to employees who work exclusively on government contracts. But Saavedra's employees did commercial work, too.

Saavedra argued that only time spent in contract work went to satisfy the minimum time requirement. The Department argued that both contract and commercial time should be counted to establish eligibility, with the benefit prorated to reflect the percentage of time spent on contract work.

The parties disagreed on how to prorate the benefit. Saavedra contended the percentage should reflect the ratio of contract time to total time worked. The Department would use the ratio of contract time to the minimum time specified to qualify for the benefit.

The Department produced a 1970 opinion letter prescribing its method. A government witness testified that the letter exemplified the Department's consistent and longstanding policy.

Saavedra argued that this had to be published before it could bind him and was therefore void. The ALJ disregarded the letter. The administrator disagreed.

■ It is well settled that an agency may announce and implement new administrative policy by adjudication. *Montgomery Ward & Co. v. FTC,* 691 F.2d 1322, 1328 (9th Cir.1982). A fortiori, it should be able to apply longstanding (though unpublished) policy in an adjudication.

■ The administrator was not obliged to rule for Saavedra simply because the policy was unpublished. *Cf. Legal Aid Society v. Brennan,* 608 F.2d 1319, 1341 n. 43 (9th Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980) (Department of Labor Technical Guidance Memorandum entitled to weight because it reflected the agency's construction, even if not binding because unpublished). Courts accord deference to an agency's reasonable and conforming interpretation of its own regulation. *Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123, 131 (9th Cir. 1980).

■ The opinion letter parallels the Department's published methods, which count commercial time in computing eligibility for annual vacation benefits. 29 C.F.R. § 4.171. *Cf. Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (weight to be given to Department's bulletin interpreting statutory labor standards depends in part on consistency with its other pronouncements). The published examples are explicitly said to be illustrative and not exhaustive. 29 C.F.R. § 4.101.

Saavedra characterizes the Department's methods as arbitrary and capricious. But with his method of prorating, an employee with the same contract hours as others would get a lower benefit if he put in more commercial hours. Adopting that method would have been arbitrary and capricious.

### B. Ambiguity Because of Illegible Number

■ According to the ALJ, the monthly health and welfare benefit in the first contract was ambiguous because the figure was poorly reproduced. Though the amount was supposed to be $88.35, the ALJ computed Saavedra's liability as $38.35 under the contra proferentem rule.

The administrator set aside this part of the ALJ's decision. He stated that the disputed 8 was obviously not the same as the 3 in the same figure.

■ Whether an ambiguity exists is a question of law. *United States v. Sacramento Municipal Utility District,* 652 F.2d 1341, 1343–44 (9th Cir.1981). The administrator concluded there was no ambiguity here. This he was free to do. His "clearly erroneous" standard for reversing the ALJ's factual findings is inapplicable. Even if the existence of an ambiguity seems a factual question, the administrator reasonably thought the ALJ's finding clearly erroneous.

■ He buttressed his reversal by alternatively resolving the legal issues raised if an ambiguity did exist. See *supra.* He added that the contract would violate the wage determination if read as did the ALJ. The latter's interpretation resulted in an illegal, subminimum health and welfare benefit. An interpretation giving a lawful meaning is preferred. Restatement (Second) of Contracts § 203(a) (1979).

## CONCLUSION

We too are not favorably impressed with the government's obfuscatory practices in these contracts. Wage determinations have significant financial consequences for government contractors. The Department,

having received numerous inquiries about the same provisions that confused Saavedra, was aware of the problems. A government agency should set forth clearly its legal requirements. This one is capable of doing so, as it demonstrated by eliminating, in the second contract, the ambiguity about whether to count noncontract time when computing eligibility for the health and welfare benefit.

Straightforward notice would foster the purposes of the Act by promoting understanding of, planning for, and expeditious compliance with wage and benefit provisions. It would also save the cost to the public of enforcement proceedings and litigation against unwitting violators.

■ However, a businessman is presumed to assent to the terms of his contract whether or not he knows of them. Restatement (Second) of Contracts § 23 & comment b, § 157 & comment b.

Allowing one to avoid contractual obligations by failing to read or understand them would undermine reliance on written instruments and, in this case, disadvantage blameless employees. Saavedra had a duty to read the contracts. He owed that to himself, as he was bound by their terms, read or unread, and by the extra-contractual wage determination. His failure to read prevented him from even discovering alleged ambiguities, much less detrimentally relying on his interpretation of them or clarifying them before contracting.

The Secretary's decision was not arbitrary nor capricious, was in accordance with law, and was supported by substantial evidence. Most of his reversals of the ALJ were on legal issues. His conclusions on these conformed to the Act's purpose and to departmental policy, published and unpublished. Reversals of factual findings were limited to those he reasonably considered clearly erroneous.

Affirmed.