**MASTERCRAFT FLOORING, INC., et al., Plaintiffs,**

v.

**Raymond J. DONOVAN, Defendant.**

**Civ. A. No. 83–1737.**

United States District Court, District of Columbia.

May 24, 1984.

William J. Scott, Dayton, Md., Ronald S. Liebman, Washington, D.C., for plaintiffs.

Richard A. Stanley, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiffs brought this action against the Secretary of Labor and the Comptroller General[1] for injunctive and declaratory relief from the final administrative action of the Department of Labor debarring plaintiffs for violations of the Service Contract Act, 41 U.S.C. §§ 351–358, and implementing regulations. It is alleged in the complaint that the Secretary's decision to place Mastercraft on the list of persons ineligible

to contract with the Federal government was violative of the Administrative Procedure Act. Both sides have moved for summary judgment. For the reasons stated below, plaintiffs' motion will be granted and defendant's motion will be denied.

### I

The material facts are not in dispute. On April 7, 1977, Mastercraft Flooring, Inc. was awarded a contract to provide all labor and materials for the alteration and installation of carpeting and other floor covering in some fifty federal office buildings located in the Washington, D.C. area between June 1, 1977 through May 3, 1978. The contract was subject to the Service Contract Act which requires that certain minimum wages and fringe benefits be paid to employees engaged in government contract work. Early in 1978, the Department of Labor conducted an investigation to determine whether Mastercraft was complying with the statute, from which it concluded that Mastercraft had misclassified some of its employees and had failed to pay the proper fringe benefits to some others. In April, 1978, Mastercraft paid the amount demanded by the government (*i.e.*, $11,548.02) under protest. However, subsequently the company conceded that it had failed to pay full fringe benefits between July and December, 1977 in the amount of $6,218.38.

On August 28, 1978, the Regional Solicitor for Region III of the Department of Labor filed a complaint against Mastercraft and its president, and the following January, an evidentiary hearing was held at which the parties presented live testimony and submitted documentary evidence. The Administrative Law Judge issued his decision on November 5, 1979, as follows.

First. The ALJ found that there was some evidence to support the government's charge that some of Mastercraft's employees who were hired as furniture movers,

---

1. The Comptroller General is responsible for publishing a list of contractors who are ineligible to bid for government contracts. Plaintiffs' names were placed on the list by the Comptroller General upon the order of the Secretary of Labor.

laborers, or helpers actually performed duties normally performed by apprentices or journeymen carpet layers. He also found, however, that the company and its president neither authorized nor encouraged such activities by these employees, but that, to the contrary, when management observed any furniture mover engage in activities outside his job function, it invariably instructed him to cease doing so immediately.

Second. With respect to the Department of Labor's charge that Mastercraft improperly altered employee time cards and underpaid its employees, the ALJ determined that, because many of the government buildings in which Mastercraft was removing and installing carpet were in close proximity to the employees' homes, employees were permitted to proceed to the work site directly from their homes without punching a time clock at the office. These employees were instructed, however, to call in and to report their starting and quitting times for recordation by a timekeeper. The ALJ found that many of the employees violated this trust and attempted to defraud Mastercraft by reporting more hours than they had actually worked, and that the company, upon learning of such practices, justifiably corrected their time cards.[2] In making this finding, the ALJ noted that

> the general tone of the testimony and my personal observation of the demeanor of the witnesses leads me to conclude that, with very few exceptions, the ... employees were attempting to cheat [Mastercraft] whenever and however possible

**2.** Indeed, if an employee disputed the number of hours recorded on his time card, Mastercraft would add the number of additional hours the employee claimed to have worked to his subsequent pay check.

**3.** With one minor exception involving $18.45, the ALJ found that Mastercraft paid all of its employees for all the hours they actually worked. *Id.* at 5 ¶ 17.

**4.** The fringe benefits due under the contract were additional hourly cash payments which were added to the employees' hourly rate.

and were generally unreliable and untrustworthy.

ALJ Decision Findings of Fact at 5 ¶ 15.[3]

Third. Mastercraft stipulated that it had failed to pay the fringe benefits required by the contract from July through December 1977.[4] The ALJ found, however, that this failure to pay "was not intentional, but rather inadvertent." [5] Mastercraft likewise stipulated that it failed to pay the five-cents-an-hour apprenticeship training contribution for each hour worked by a carpet layer. The ALJ found that this, too, was excusable because Mastercraft honestly and logically but nevertheless erroneously assumed that it did not have to pay such contributions because it did not have apprentices or an apprenticeship training program.

Fourth. With respect to yet another violation charged, the ALJ found that Mastercraft complied with the notice requirements of the contract and the Act by posting the terms and conditions of employment as well as the rate of compensation required under the contract.

Fifth. The ALJ found that Mastercraft's records were generally accurate and adequate. In his view, based on evidence that he found credible, those discrepancies and errors that did exist were not committed willfully with an intent to avoid the requirements of the contract and the Act but were "the result of an honest effort by the Employer to maintain accurate records of the actual time worked by his employees and to keep from being defrauded by said employees." Findings of Fact at 7 ¶ 25.

As a result of the violations listed above, the ALJ held that Mastercraft owed its

**5.** Mastercraft misread the wage rates because the fringe benefits were not consistently listed under the appropriate headings in the various Wage Determination categories of the contract, and because, as the ALJ stated,

> the inconsistent method of designating fringe benefits within the same contract is or could be extremely misleading.

Conclusion of Law at 10 ¶ 7. Upon learning that it had misread the contract, Mastercraft promptly paid all the health and welfare benefits in full before the Labor Department filed its administrative complaint.

employees $6,218.30 in fringe benefits.[6] He further held that, in failing to pay the fringe benefits, plaintiffs breached the contract and violated the Act and regulations and were therefore subject to the debarment provisions of section 5(a) of the Service Contract Act, 41 U.S.C. § 354(a).[7] The ALJ went on to recommend to the Secretary, however, that plaintiffs be relieved from the ineligible list provisions of Section 5(a), based upon the "unusual circumstances" of the case.[8]

The Department of Labor appealed the ALJ decision, and on November 4, 1981, the Administrator for the Wage and Hour Division issued a 13-page decision, finding in favor of the Department on all issues. The first twelve pages of this opinion consists of a *verbatim* repetition of the Statement of the Case, the Argument, and the Conclusion found in the government's brief. The only words added by the Administrator were the following:

> On the basis of the entire record, I find that the views expressed by the Government in its exceptions, as set out above are supported by the evidence in the record, are in accordance with applicable law, and are proper. Accordingly, to the extent that the findings and conclusions contained in the decision of the Administrative Law Judge are consistent with such views they were affirmed; to the extent that they are inconsistent with such views, they are set aside and the Judge's decision is modified to accord with the views expressed by the Government in its exceptions.[9]

Administrator's Opinion of November 4, 1981 at 12.

On May 26, 1982, the Secretary of Labor, in a one paragraph letter addressed to the Comptroller General, affirmed the decision of the Administrator and directed the Comptroller General to place plaintiffs on the list of ineligible bidders. This lawsuit followed.[10]

## II

 The issue presented to this Court is whether the Secretary's decision to debar· plaintiffs was arbitrary, capricious, an abuse of discretion, or otherwise not in

---

6. He also concluded that the company was entitled to recover all sums in excess of that amount it paid to its employees pursuant to the directions of the Department of Labor.

7. That section provides as follows:

The Comptroller General is directed to distribute a list to all agencies of the Government giving the names of persons or firms that the Federal agencies of the Secretary have found to have violated this chapter. Unless the Secretary otherwise recommends because of unusual circumstances, no contract of the United States shall be awarded to the persons or firms appearing on this list or to any firm, corporation, partnerships, or association in which such persons or firms have a substantial interest until three years have elapsed from the date of publication of the list containing the name of such persons or firms. Where the Secretary does not otherwise recommend because of unusual circumstances, he shall, not later than ninety days after a hearing examiner has made a finding of a violation of this chapter, forward to the Comptroller General the name of the individual or firm found to have violated the provisions of this chapter.

8. The circumstances upon which the ALJ based his recommendation are as follows:

(1) Neither [plaintiff] has any past history of violations of the Act, (2) The nature, extent, and seriousness of the present violations are unintentional, inadvertent and not overly serious, and the circumstances of the case show that the violations were not caused by [plaintiffs'] culpable negligence to ascertain whether its pay policies were in compliance or culpable disregard or whether they were not, and that full payment was made when the requirement for such payment was pointed out to them, and (3) [Plaintiffs] cooperated in the investigation, and showed good faith in their dealings with both their employees and the Department of Labor.

ALJ Decision, Conclusion No. 14 at 11.

9. For the reasons indicated by the government, the Administrator also rejected the ALJ's recommendation that plaintiffs be relieved from the debarment provisions of the Act.

10. Although plaintiffs contest the individual findings and conclusions of the Administrator which were adopted by the Secretary, they seek to overturn only its determination that no "unusual circumstances" are present that would justify removal of their names from the list of those ineligible to bid on government contracts.

accordance with law. 5 U.S.C. § 706. This standard does not change merely because the Secretary rejected the ALJ's recommendation. *Stamper v. Secretary of Agriculture*, 722 F.2d 1483, 1486 (9th Cir.1984); *Saavedra v. Donovan*, 700 F.2d 496, 498 (9th Cir.1983).[11] However, agency findings which are contrary to the factual findings of the ALJ are entitled to less weight than they would otherwise receive, particularly where, as here, credibility determinations from demeanor evidence are at issue. *Saavedra v. Donovan, supra,* 700 F.2d at 498.

Under the Department's regulations, the decision of the ALJ becomes the final agency decision after twenty days "unless exceptions are filed thereto." 29 C.F.R. § 6.10(b). The regulations further provide that, if a party takes exception to the ALJ's decision, the Administrator, after reviewing the record,

> shall affirm, modify, or set aside, in whole or part, the findings conclusions, and order contained in the decision of the hearing examiner, and *shall include a statement of reasons or bases for the actions taken. With respect to the findings of fact, the Administrator shall modify or set aside only those findings that are clearly erroneous* (emphasis added).

29 C.F.R. § 6.14.

It is clear from the record that the Administrator was completely derelict in his duties. He gave no statement of his reasons nor did he provide any basis for his decision to set aside the ALJ's findings and recommendation. As noted *supra* all the Administrator did was to copy the government's brief. In so doing, he entirely ignored the ALJ's decision, including those of the ALJ's findings which were based on his personal observations of the witnesses' demeanor and their credibility.[12]

An agency which expects deference for its decisions from a court upon review must do more than to copy the government's brief and label it a decision. A determination such as that is essentially worthless.

### III

It remains to be determined whether there is any substantive basis for the Administrator's decision.

With regard to the issue of debarment, the Secretary has provided that the existence of "unusual circumstances"

> ... must be determined on the basis of the facts and circumstances of the particular case. Some of the principal factors which must be considered in making this determination are whether there is a history of repeated violations of the Act; the nature, extent, and seriousness of past or present violations; whether the violations were willful, or the circumstances show there was culpable neglect to ascertain whether certain practices were in compliance, or culpable disregard of whether they were or not, or other culpable conduct (such as deliberate falsification of records); whether the respondent's liability turned on bona fide legal issues of doubtful certainty; whether the respondent has demonstrated good faith, cooperation in the resolution of issues, and a desire and intention to comply with the requirements of the Act; and the promptness with which employees were paid the sums determined to be due them. It is clear that the mere payment

---

11. The ALJ's findings are simply part of the administrative record that the Court must weigh against the other evidence supporting the agency's decision.

12. To cite just one example, the Administrator overruled the ALJ's finding that, based on testimony that he deemed credible, recordkeeping errors were not done willfully or with an intent to avoid the requirements of the regulations, but were the result of an honest effort to maintain accurate records and to keep from being defrauded by the employees. An acceptance, without discussion, of the Department's contention that these discrepancies were instead deliberate falsifications intended to avoid overtime liability, was clearly arbitrary. That arbitrariness was hardly cured or alleviated by the Administrator's conclusion that the ALJ's finding was erroneous "to the extent that [it was] inconsistent with [the Department's] views."

of sums found due employees after an administrative proceeding, coupled with an assurance of future compliance, is not in itself sufficient to constitute "unusual circumstances" warranting relief from the ineligible list sanction. It is also clear that a history of recurrent violations of identical nature, such as repeated violations of identical minimum wage or recordkeeping provisions does not permit a finding of "unusual circumstances." * * *

*Washington Moving and Storage Co.*, No. SCA–168, March 12, 1974; *quoted in Federal Food Service, Inc. v. Donovan*, 658 F.2d 830 at 833 (D.C.Cir.1981).

Applying the Secretary's criteria to the instant case, the ALJ found that (1) plaintiffs had no prior history of any violations of the Act; (2) the current violations were neither serious nor extensive; (3) these violations were unintentional and inadvertent, and did not result from plaintiffs' culpable negligence or disregard of the requirements of the contract, the Act, and the regulations; (4) plaintiffs cooperated in the investigation, made full payment of the fringe benefits upon learning that they had misread the contract, and showed good faith in their dealings with both their employees and the Department of Labor; and (5) plaintiffs paid all amounts alleged to be due prior to filing of the administrative complaint by the Department.[13]

In short, in every single pertinent respect the ALJ found that Mastercraft had demonstrated that unusual circumstances militating against debarment were present. Those findings are not fanciful or arbitrary, but they appear to be a careful and accurate conclusion based on the record.

Under the regulations, the Administrator had the authority to set aside the ALJ's factual findings only if they were clearly erroneous. 29 C.F.R. § 6.14. Here, however, the Administrator could not possibly find that these findings were clearly erroneous; and his rejection of these findings was based on no evidence whatsoever.[14]

Debarment is a severe penalty which may have a serious economic impact upon a business and may well cause it to fail. It should therefore be used prudently and not, as in this case, with a reckless hand. As had been well stated,

> [t]he very absence of any sanction other than the catastrophic one of three years debarment supports the legislative history that use of debarment against innocent and petty violations was not intended.

*Federal Food Service, Inc. v. Donovan, supra*, 658 F.2d at 834.

The media reports almost daily large-scale violations of procurement laws and regulations by mammoth corporations, but the government appears generally to bear such violations with equanimity, making ever larger purchases from the offenders. Yet here, where the Department of Labor's own Administrative Law Judge, in a careful opinion, found these plaintiffs to have committed violations which were inadvertant, relatively insignificant, and quickly rectified, the Administrator of the Wage and Hour Division rubber-stamped the brief of the Department's prosecuting arm without apparently either thought or deliberation. The Administrator's decision, in turn, was then rubber-stamped by, or in the name of, the Secretary. What we have here, then, is a classic case of arbitrary and capricious action.

Plaintiffs' motion for an injunction and for declaratory relief will be granted.

---

**13.** The remaining factor—whether liability turned on *bona fide* legal issues of doubtful certainty—is not applicable here.

**14.** For example, the Administrator cited no evidence in support of his crucial finding that the evidence shows ... the deliberate falsification of [plaintiff's] records, and it does not demonstrate good faith on their part, nor a desire and intent to comply with the law.
Decision at 12–13. The Administrator cited to no evidence because the record does not contain any such evidence.