NATIONWIDE BUILDING MAINTENANCE, INC.; Ohio Building Service and Maintenance, Inc.; William W. Johnson, Plaintiffs–Appellants,

v.

Robert B. REICH, Secretary of Labor, et al., Defendants–Appellees.

No. 92–3905.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 12, 1993.

Decided Jan. 21, 1994.

William W. Johnson, pro se.

Daniel P. Jones, Columbus, OH, for William W. Johnson.

Felix C. Wade (briefed), Schottenstein, Zox & Dunn, Columbus, OH, for William W. Johnson, Ohio Bldg. Service & Maintenance, Inc., Nationwide Bldg. Maintenance Inc.

Allen H. Feldman, Judith D. Heimlich (briefed), U.S. Dept. of Labor, Washington, DC, for Robert Reich, Dennis E. Whitfield, Charles A. Bowsher, Paula V. Smith.

Before: BOGGS and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.

BOGGS, Circuit Judge.

This appeal raises the question of whether a federal agency's extended delay in implementing one part of its own published regulations can ultimately prevent it from enforcing other aspects of those regulations. The Secretary of Labor published a regulation stating that she "shall establish a Board of Service Contract Appeals," but she did not form that board for more than eight years. During that interim period, the Deputy Secretary of Labor, pursuant to the regulation, continued to hear all service-contract appeals. The district court found that, because the Secretary of Labor did not appoint the board that she was to have established under her published regulation, the department had forfeited the right to have its designated "interim" appellate authority continue to hear such appeals. For the reasons set forth below, we reverse the district court and remand the underlying matter to have that court consider the challenges to the substance of the agency's appellate determination that prompted this suit.

I

The Service Contract Act of 1965, as amended,[1] ("the Act") was enacted to provide labor standards for the protection of. service-contract employees who work at federal agencies.[2] The Act sets minimum wage standards, fringe benefits, and working conditions. Employers who violate terms of the Act can face various penalties, including being debarred by the Secretary of Labor from receiving any further federal service contracts for up to three years. 41 U.S.C. § 354(a). However, violators may be excused from punishment if the Secretary finds "unusual circumstances" to justify such a mitigation of punishment.[3] *Ibid.*

When the Department of Labor brings a charge against a service contractor, a hearing may be held before an Administrative Law Judge ("ALJ"). *See* 29 C.F.R. §§ 6.15–.21. On March 21, 1984, the Secretary of Labor published a final regulation that stated:

> The Secretary of Labor shall establish a Board of Service Contract Appeals, by Secretary's Order and delegate to the Board the authority and responsibilities

1. Pub.L. No. 89–286, § 2; 79 Stat. 1034 (1965), codified as amended at 41 U.S.C. §§ 351–358.

2. The service contract had been the only remaining category of federal contracts to which no labor-standards protection had applied. Service employees include guards, watchmen, laundry staff, custodians, janitors, cafeteria workers, and housekeepers.

3. In *Washington Moving & Storage Co.*, No. SCA–168 (Sec'y of Labor March 12, 1974) (*quoted in Federal Food Serv., Inc. v. Donovan*, 658 F.2d 830, 833 (D.C.Cir.1981)), which was the leading case at the time of Nationwide's original hearing, principal "unusual circumstances" were found to include: (1) whether the accused contractor had a history of prior violations; (2) the nature, extent, and seriousness of the violations; (3) whether the violations stemmed from culpable or willful conduct; (4) whether liability turned on bona fide issues of doubtful legality; (5) whether the violator had manifested a good faith readiness to cooperate in resolving the issues so as to comply with the Act; and (6) whether the violator made prompt payment to those owed back wages.

set forth herein. During the interim period prior to the appointment of a duly constituted Board, the functions of the Board shall be performed by the Secretary or his designee. . . .

49 Fed.Reg. 10,636 (1984) (codified at 29 C.F.R. § 8.0). This Board of Service Contract Appeals ("the Board") would hear all appeals from ALJ determinations. 29 C.F.R. § 8.1. To be timely, such appeals would have to be filed with the Board within forty days of an ALJ's decision. *Id.* § 6.20. According to the 1984 regulation, *"[d]uring the interim period prior to the appointment* of a duly constituted Board, the functions of the Board shall be performed by the Secretary or [her] designee." *Id.* § 8.0 (emphasis added). On February 24, 1984, a month earlier, the Secretary had formally delegated such interim authority to the Under Secretary of Labor.

Nationwide Building Maintenance, Inc. ("Nationwide") provides janitorial, maintenance, and related service-contract work in federal buildings. The company began in the 1970s as a one-man custodial service. It does no business other than service contracts, and all its contracts are with the federal government. In June 1984, the Administrator of the Wage and Hour Division ("the Wage Administrator") filed an administrative complaint against Nationwide, charging that it had violated the Act in its six federal contracts. The ALJ conducted a hearing in August 1985, pursuant to 29 C.F.R. § 6.15. He decided in June 1986 that Nationwide had indeed violated the Act but that "unusual circumstances" existed within the meaning of 41 U.S.C. § 354(a).[4] Therefore, the ALJ held that Nationwide would not be debarred from federal contracts.

Within forty days of the ALJ's decision, the Wage Administrator filed an appeal with the Under Secretary of Labor. The Under Secretary was still serving as the "interim" appellate authority because the Secretary had still not established the Board of Service Contract Appeals. Nationwide moved at that time to dismiss the appeal, contending that the appeal was intrinsically untimely because it had not been filed within forty days with the *Board of Service Contract Appeals,* as allegedly required by 29 C.F.R. § 8.0.

In May 1988, the Deputy Secretary[5] made a procedural determination that the Wage Administrator had timely filed the appeal with the proper "interim" officer. As to the substance of the matter, the Deputy Secretary held that "there are no unusual circumstances which warrant relieving" Nationwide from a three-year debarment from obtaining federal contracts for its violations of the Act.[6]

Nationwide turned to the federal district court in July 1988 and sought judicial review of the Deputy Secretary's action, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706. In its complaint, Nationwide argued that the Deputy Secretary had no right to hear the Wage Administrator's appeal from the original ALJ decision because

---

4. The ALJ found that Nationwide: (1) had not been a repeat violator; (2) had incurred a liability of $11,501 in back wages for its violations, which amounted to less than 1% of its total revenue during the period in question, with most of those violations stemming from misunderstandings over fringe benefits requirements; (3) had not acted culpably but had negligently erred during a hectic period when it grew from a one-man custodial service to a company providing service on six federal contracts in Cleveland and Columbus, Ohio; West Virginia, Virginia, Alabama, and Guantanamo Bay; (4) had incurred 90% of its liabilities under the Act in two of the contracts, where it had proven that its errors stemmed from bona fide disputes regarding the law; (5) had acted promptly and thoroughly, in good faith, to rectify its errors and to prevent future violations; and (6) had promptly offered to pay all contested backwages into an escrow fund, pending adjudication of the dispute with the Labor Department.

5. The Under Secretary's title was changed to Deputy Secretary in 1986. Pub.L. No. 99–619, § 2, 100 Stat. 3491 (1986). That change in designation does not affect any issue under consideration in this appeal.

6. The Deputy Secretary held that, in fact, Nationwide (1) had repeatedly violated the Act's holiday-pay requirements; (2) had continued to underpay its employees, even after being instructed by a compliance officer to correct its practices; (3) had violated the law in more than a *de minimis* way, if only because it had repeatedly failed to heed warnings; and (4) had been at least culpably negligent, if not wilfully so, because of its repeat violations.

two years had passed since the regulation was published in March 1984. Therefore, Nationwide asked the district court to dismiss the Wage Administrator's appeal altogether, because, after two years, the Deputy Secretary could no longer be considered "interim," and because the proper appellate authority had still not been created.

The district court ruled in May 1992, granting summary judgment to Nationwide. The court vacated, as "invalid," the Deputy Secretary's 1988 decision, finding that the Secretary of Labor had abused her discretion by not complying with the published regulation that stated that she "shall establish a Board of Service Contract Appeals." In addition, although not asked to do so by either of the parties, the district court ordered the Secretary to establish the Board forthwith and to place the Wage Administrator's 1986 appeal before that body. Nationwide appeals from that element of the district court's ruling, contending that the Board had no jurisdiction to hear the Wage Administrator's appeal.[7]

## II

A government agency's regulations that have been published in the Code of Federal Regulations "have the force and effect of law...." *Moody v. United States,* 774 F.2d 150, 156 (6th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 65, 93 L.Ed.2d 24 (1986).

> Statements made by federal agencies may constitute substantive rules or merely be general policy statements. Agencies are bound by duly promulgated substantive rules, which have the force of law, while interpretive rules or policy statements do not have binding effect.

*Dyer v. Secretary Health & Human Servs.,* 889 F.2d 682, 685 (6th Cir.1989) (citations omitted).

The District of Columbia Circuit has held that:

> regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review of agency action. Such self-imposed constraints may supply the "law to apply" ... to overcome the presumption against reviewing administrative agency inaction, including nonenforcement decisions.... When an agency chooses to so fetter its discretion, the presumption against reviewability ... must give way.

*Center for Auto Safety v. Dole,* 846 F.2d 1532, 1534 (D.C.Cir.1988) (citations omitted); *see also Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957) (holding that "[w]hile the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards ... having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them").

Nationwide argued to the district court that the Secretary of Labor failed to comply with the law when she allowed more than two years to pass, from March 1984 to August 1986, without naming a Board of Service Contract Appeals. The court agreed with Nationwide that, because of the excessive delay, the Secretary's duly appointed "interim" appellate authority had lost the jurisdiction to hear service-contract appeals. Citing *Griffin v. Harris,* 571 F.2d 767, 772 (3d Cir.1978), the district court based its summary judgment for Nationwide partly on the premise that "an agency must follow its own published regulations, even when a particular

7. On July 10, 1992, the Secretary finally appointed the Board of Service Contract Appeals. 57 Fed.Reg. 33,414. Eleven days later, the Wage Administrator's 1986 appeal against Nationwide was filed with the Board. In its defense, Nationwide argued that the Board lacked jurisdiction because it had not received that appeal within forty days of the ALJ's original June 1986 findings. However, the Board rejected Nationwide's procedural argument, holding that, even though the Deputy Secretary had lacked authority to hear the Wage Administrator's appeal, the appeal itself had been validly filed within forty days of the ALJ's ruling. Ultimately, after hearing the Wage Administrator's appeal, the newly-constituted Board also reversed the ALJ's 1986 decision and ruled that Nationwide should indeed be debarred from receiving federal contracts for three years. Nationwide has appealed to federal district court from the substance of the Board's holding. *Nationwide Bldg. Maintenance, Inc. v. Martin,* No. C2–92–1029 (S.D.Ohio, filed Nov. 9, 1992). That substantive appeal is not before this panel, but it may be controlled by this decision.

decision involves some discretion." The district court found:

> Some circuits have been reluctant to decide that an agency's violation of its own rules and regulations automatically invalidates agency action. . . .
>
> The United States Court of Appeals for the Sixth Circuit, however, has followed other circuits, which view agency noncompliance as a fatal flaw in agency action.

(Citations omitted).

While we recognize that the Secretary's delay in establishing the Board was more extended than seems appropriate, we note that the published regulation set no time limit for the Board's creation. Furthermore, we are not persuaded by the proposition that an officer who is "interim" in 1984 stops being "interim" in 1986. "Interim" has been defined as "in the meantime: MEANWHILE ... TEMPORARY, PROVISIONAL." *Webster's Third New International Dictionary* 1179 (1986). An "interim officer" is one "appointed to fill the office during a temporary vacancy, or during an interval caused by the absence or incapacity of the regular incumbent." *Black's Law Dictionary* 731 (5th ed. 1979). The Secretary of Labor, in accordance with her published regulation, designated the Under Secretary to "perform" the functions of the Board "[d]uring the *interim period prior to the appointment* of a duly constituted Board. . . ." 29 C.F.R. § 8.0 (emphasis added). That "interim period" continued until July 10, 1992, the day on which the Secretary finally appointed the Board of Service Contract Appeals. 57 Fed.Reg. 33,414. During the eight-year period that transpired "in the meantime," the Under Secretary—later the Deputy Secretary—was legally authorized by the published regulation to "perform" the "functions of the Board."

This analysis is more than definitional. As a matter of public policy, Nationwide's argument and the district court's ruling could result in a troubling result if upheld. On the surface, in the narrow context of this case, the district court's ruling would seem to punish the Department of Labor appropriately for its excessive delay in appointing a permanent Board of Service Contract Appeals. Thus, the ruling that no legitimate appellate

authority existed for the eight years between March 1984 and July 1992 would mean that a service contractor who, like Nationwide, had won a *favorable* ALJ decision would be "safe" from any and all possible appeals that might be brought. But what of other service contractors, haled before ALJs on similar charges—only, in their cases, found *guilty* by those ALJs? Before what forum could they appeal an ALJ's decision to debar them for three years? If the Deputy Secretary did not have the authority to hear appeals during the interim before the Board was finally appointed, then a vacuum necessarily existed, rendering eight years of ALJ findings in service-contract cases unappealable. Public policy should not sanction such a grant of absolute authority to an agency's administrative law judges, especially in the absence of a clear mandate to that effect.

It has long been said that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. (7 Wall) 506, 514, 19 L.Ed. 264 (1868). However, jurisdiction never ceased to exist in this case. The Secretary of Labor designated an interim appellate authority, and that authority complied with the published regulations by performing the functions of the Board that had not yet been established.

### III

In holding that the Deputy Secretary of Labor had authority to hear the Wage Administrator's 1986 appeal from the ALJ's findings, we are not unmindful that this matter has preregrinated through the legal system for nearly a decade. We note, however, that Nationwide has suffered no debarment during that entire period, despite the violations that were found first by the ALJ, then by the Deputy Secretary, and most recently confirmed by the Board of Service Contract Appeals. Rather than having been debarred nine years ago when the Labor Department first brought charges, or seven years ago when the Wage Administrator filed the appeal, or five years ago when the Deputy Secretary reversed the ALJ and ordered debarment, Nationwide has been able to contin-

ue competing for government contracts throughout the past decade. The company was founded in the 1970s as a one-man custodial service. Rather than having been prejudiced by the delay in a final determination to uphold the Deputy Secretary's 1986 "interim jurisdiction," Nationwide has benefited, effectively deferring debarment while appealing to the Deputy Secretary for a rehearing, then to the district court, and now to this court.[8]

Because we hold that the Deputy Secretary had the authority to debar Nationwide when he did so in 1986, we agree with Nationwide that the district court should not have submitted the Wage Administrator's 1986 appeal to a Board of Service Contract Appeals that was constituted only in 1992. There was no need to do so. Instead, we remand the matter to the district court for a consideration of any substantive legal challenges that Nationwide raises against the Deputy Secretary's 1988 decision to debar the company for three years from obtaining federal service contracts.

### IV

For the foregoing reasons, we REVERSE the district court's decision to vacate the Deputy Secretary's 1988 ruling, which was issued under the interim appellate authority that had been properly granted by the Secretary of Labor. Consequently, we hold that the Wage Administrator's 1986 appeal should not have been directed to the Board of Service Contract Appeals for yet another hearing. Rather, we remand the matter to the district court for a consideration of substantive challenges that Nationwide raises against the Deputy Secretary's 1988 determination that "unusual circumstances" did not exist to excuse the company's violations of the Service Contract Act.

---

**8.** Indeed, our holding in this case ironically may defer Nationwide's potential debarment and, with equal irony, "penalizes" the Department of Labor for having delayed in naming the Board. If the Board had been established in 1984, it would have been in place to hear the 1986 appeal, and its decision to debar Nationwide would have become effective at that time.