UNITED STATES of America,
Plaintiff–Appellant,

v.

Hunter L. TODD a/k/a Todd Hunter d/b/a
Courier Express Mail & Package Delivery Service, Defendant–Appellee.

No. 93–1210.

United States Court of Appeals,
Sixth Circuit.

Submitted June 23, 1994.

Decided Oct. 24, 1994.

Carolyn Bell Harbin, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Detroit, MI, William J. Stone, and Joan Brenner, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for plaintiff-appellant.

Hunter L. Todd (briefed) pro se.

Before: KEITH, BOGGS, and BATCHELDER, Circuit Judges.

BOGGS, Circuit Judge.

After winning a judgment against Hunter Todd in an administrative hearing that Todd refused to attend, the Department of Labor ("DOL") sought a collection order enforcing the judgment in district court. However, the district judge not only denied DOL's enforcement motion but also ordered the Administrative Law Judge to reopen the agency case and allow Todd another opportunity to be heard. DOL appeals from the district judge's order, contending that he exceeded his jurisdiction, and that it is entitled to an enforcement order. For the reasons set forth below, we reverse and remand the matter to the district court.

I

Courier Express Mail & Package Delivery Service, a company owned by Hunter Todd, did business with the United States government, hauling mail from December 1983 to April 1986 under two contracts with the United States Postal Service ("U.S.P.S.").[1] As a government contractor, Todd's treatment of his employees was governed by the

---

**1.** Contract No. 48115 ran from December 13, 1983, to June 30, 1985, and was renewed. Contract No. 48160 ran from July 1, 1985, to June 30, 1989. The United States Postal Service canceled both contracts in April 1986 because of Todd's non-performance.

McNamara–O'Hara Service Contract Act of 1965 ("the Act").[2]

The Act establishes minimum labor standards for the protection of non-government service employees of contractors and subcontractors furnishing services to or performing maintenance service for federal agencies.[3] It sets minimum wage standards, fringe benefits, and working conditions. Employers who violate the Act can face various penalties, including being debarred by the Secretary of Labor from receiving any further federal service contracts for up to three years. 41 U.S.C. § 354(a). However, violators may be excused from punishment if the Secretary finds "unusual circumstances" to justify such a mitigation of punishment.[4] *Ibid.*

To institute enforcement proceedings against a service contractor, the Department of Labor's Associate Solicitor for Fair Labor Standards, or a Regional Solicitor, issues a complaint and causes the complaint to be served upon the alleged offender. 29 C.F.R. § 6.15(a). Unless a hearing is waived by the respondent contractor in his answer to the Secretary's charges, a hearing time and place is then set by an administrative law judge ("ALJ"). *Id.* §§ 6.15(c), 6.16. The Secretary's "findings of fact after notice and hearing ... shall be conclusive upon all agencies of the United States, and if supported by the preponderance of the evidence, shall be conclusive in any court of the United States...." 41 U.S.C. § 353(a) (incorporating *id.* § 39). If the contractor is found to have violated the Act, he is liable to his employees for the underpayments. *Id.* § 352(a). A government agency doing business with the violator may withhold payments still owing on the contract and set aside those funds for payment to the ag-

grieved employees. *Ibid.* If the withheld funds prove insufficient to reimburse the underpaid workers completely, "the United States may bring action against the contractor in any court of competent jurisdiction to recover the remaining amount of underpayments." *Id.* § 354(b). Any sums recovered by the government in a Section 354(b) action are payable directly to the underpaid employees. *Ibid.*

The ALJ's decision may be appealed to the Board of Service Contract Appeals ("the Appeals Board"). *See generally Nationwide Bldg. Maintenance v. Reich,* 14 F.3d 1102 (6th Cir.1994); 29 C.F.R. § 8.1. To be timely, such appeals must be filed with the Appeals Board within forty days of an ALJ's decision. 29 C.F.R. § 6.20. The Board's decisions are regarded as those of the Secretary. 29 C.F.R. §§ 8.0, 8.1. Afterwards, the Board's decisions may be appealed to United States district court, pursuant to the Administrative Procedure Act. 5 U.S.C. §§ 701–706. On judicial review, the Secretary's findings of fact after notice and hearing are conclusive "if supported by the preponderance of the evidence." 41 U.S.C. § 353(a) (incorporating *id.* § 39); 29 C.F.R. § 4.189.

## II

In this case, the Secretary charged that Todd had failed to comply with the Act's minimum wage and benefits requirements, 41 U.S.C. § 351(b)(1); 29 U.S.C. § 206(a)(1). Accordingly, he brought an action, seeking to compensate Todd's employees for unpaid back wages and fringe benefits, and intending to debar Todd's company from obtaining contracts with the federal government. The case was assigned to an ALJ for an adminis-

2. Pub.L. No. 89–286, § 2; 79 Stat. 1034 (1965), codified as amended at 41 U.S.C. §§ 351–358.

3. The service contract had been the only remaining category of federal contracts to which no labor-standards protection had applied. Service employees include guards, watchmen, laundry staff, custodians, janitors, cafeteria workers, and housekeepers.

4. The Secretary has established guidelines to help determine whether "unusual circumstances" exist. "Some of the principal factors which must be considered in making this deter-

mination" include: (1) whether the accused contractor had a history of prior violations; (2) the nature, extent, and seriousness of the violations; (3) whether the violations stemmed from culpable or willful conduct; (4) whether liability turned on bona fide issues of doubtful legality; (5) whether the violator had manifested a good faith readiness to cooperate in resolving the issues so as to comply with the Act; and (6) whether the violator made prompt payment to those owed back wages. *See Federal Food Serv., Inc. v. Donovan,* 658 F.2d 830, 833 (D.C.Cir. 1981) (citing *Washington Moving & Storage Co.,* No. SCA–168 (March 12, 1974)).

trative hearing. 29 C.F.R. § 6.15. The matter was scheduled to be heard in Ann Arbor, Michigan. Todd was duly notified, but he responded that both contracts with the government had been concluded in Detroit, and he refused to travel forty miles to Ann Arbor. Thus, he would only attend the hearing if it were held closer to his home in Detroit. Despite Todd's response, the hearing site and date remained unchanged.

On April 26, 1989, the date set for the Ann Arbor hearing, Todd did not appear, true to his word. DOL moved that Todd be held in default, but ALJ Clarke prudently decided that the hearing should still proceed, albeit in Todd's absence, so that findings of fact could be made for the record. Consequently, DOL presented its case, which included the testimony of an agency compliance officer and of two former employees of Todd, Mary Johnson and Hubert Thompson. The former employees testified concerning their job duties, work hours, and level of remuneration. Thompson described difficult working conditions and inadequate remuneration, and he related that only after undergoing brain surgery did he learn that Todd had discontinued paying for employee health coverage. Johnson gave similar testimony and described being physically assaulted by Todd after he learned that she was cooperating with the DOL's investigation into Todd's company. DOL further adduced evidence that Todd had failed to maintain adequate employee records as required by the Act.

The Secretary's presentation satisfied the ALJ that Todd had indeed violated the Act and there were no "unusual circumstances" that could justify his violations. As a result, in a decision issued on June 14, 1989, the ALJ found that: (1) Todd's reasons for not attending the hearing were unacceptable; (2) Todd had violated the Act as charged; (3) Todd was liable to his employees for $28,333.84 in back wages and fringe benefits; and (4) the Secretary could debar Todd from contracting with the federal government for the forthcoming three years.[5] Todd did not file a petition for review of the ALJ's findings. See 29 C.F.R. §§ 6.19–.20. Therefore, the Administrative proceedings became final on July 24, 1989. Ibid.

Nearly two years later, on May 14, 1991, DOL brought a Section 354(b) action "to recover the remaining amount of underpayments," asking the United States District Court for the Eastern District of Michigan to enforce the ALJ's decision. Because the United States Postal Service had still owed Todd $2,789.49 for services rendered at the time of the ALJ's decision, that money had already been withheld, pursuant to 41 U.S.C. § 352(a). Therefore, DOL sought a judgment in the sum of $25,544.35 together with interest and costs. Todd, filing as a pro se defendant, responded that the district court lacked jurisdiction to hear the matter, that the case was time-barred, and that he should receive damages "ten (10) times greater" than the contracts listed in the DOL complaint. Furthermore, in his subsequent appearance before the district court, Todd stated for the first time that he had refused to travel to Ann Arbor in great measure because of personal difficulties stemming from the premature birth of a child. Meanwhile, in response to Todd's reply, DOL conceded that approximately half its claim was time-barred[6]; therefore, it reduced its prayer:

> This action was not filed timely with regard to the entirety of the government's claim. After the administrative hearing, there was judgment entered roughly in the amount of $25,000. Of that amount, only the $14,680.29 is timely, and we have pared down the government's claim and ask only for those timely amounts.

However, after a hearing at which Todd appeared, the district judge denied DOL's motion and remanded the matter to the ALJ, with instructions that he give Todd another chance to present his defense. This timely appeal by the Secretary followed.

---

5. It is not clear from the record whether Todd's three-year debarment has been tolled, has begun, or has been completed.

6. Because the Secretary waited until May 14, 1991, to bring his collection action in district court, all claims against Todd that had accrued prior to May 14, 1985, were barred by the six-year limitations statute. See infra section III B.

### III

DOL argues that the district judge had no right to remand the matter to the ALJ for a new hearing because: (1) Todd had been duly notified that an administrative hearing would be conducted by the agency on April 26, 1989; (2) Todd's reasons for not attending that hearing had been considered and rejected by the ALJ; (3) From the time of the ALJ's decision, Todd had forty days during which he could have petitioned for review, 29 C.F.R. § 6.20, but he failed to exhaust that administrative remedy; and (4) Todd did not ask the district court for a new hearing.

### A

[The Secretary's] findings of fact after notice and hearing ... shall be conclusive upon all agencies of the United States, and *if supported by the preponderance of the evidence, shall be conclusive in any court of the United States ....*

41 U.S.C. § 353(a) (incorporating *id.* § 39) (emphasis added). Administrative agency law can seem complex to practitioners, and the regulations describing the Labor Department's service-contract appeals process have generated particularly intense confusion. *See generally Nationwide, supra.* Although the Secretary undertook to establish a Board of Service Contract Appeals in 1984, 49 Fed. Reg. 10,636 (1984) (codified at 29 C.F.R. § 8.0), the Board was not established until July 1992. 57 Fed.Reg. 33,414. Consequently, during Todd's forty-day appeal period in the summer of 1989, following ALJ Clarke's formal decision, there was no Board of Service Contract Appeals to which he could have turned. An attorney specializing in agency law may have determined that Todd's next legal recourse was to have appealed to the Deputy Secretary of Labor, who had been designated by the Secretary to act as the agency's "interim" appellate authority during that period. *See Nationwide,* 14 F.3d at 1106. However, a *pro se* appellant would have had a difficult time making that determination. Indeed, the district judge who was asked to interpret that same question of law in *Nationwide* made a determination that required this court to reverse for error. *Id.* at 1107.

Nevertheless, in *Nationwide,* this court held that, despite the confusion, the Deputy Secretary's appointment as an "interim" appellate authority extended as long as the "interim" period lasted—from the Secretary's 1984 publication of the rule that created the Appeals Board until the Secretary's 1992 appointment of that Board. In this case, there has been no appeal, neither to the Board of Service Contract Appeals nor to the "interim" authority that existed during Todd's appellate period in 1989. Therefore, the ALJ's decision became final when the forty-day appeals period expired on July 24, 1989. Unless the district court held that the ALJ's findings were not supported by the preponderance of the evidence, there was no legal basis that could sustain the court's order to remand the matter for another round of administrative proceedings. Rather, the responsibility fell on the district court either to grant the Secretary's Section 354(b) request or to make a formal determination that the ALJ's findings are not supported by the preponderance of the evidence.

### B

When this matter is heard on remand, the district court will again be presented with numbers compiled by DOL experts who now ask for a judgment against Todd in the reduced amount of $14,680.29. Nevertheless, we have discerned at least one serious error by DOL that may result in the district court's finding that further reductions are indicated. Indeed, the record reflects that DOL has made serious procedural errors during the course of pursuing this case. As a result, whatever the district court's final findings may be, Defendant–Appellee Todd will reap a windfall, primarily at the expense of his former employee, Thompson.

Under the applicable limitations statute: [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract ... shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in

applicable administrative proceedings required by contract or by law, whichever is later....

28 U.S.C. § 2415(a). In this case, the ALJ adopted without modification DOL's claims that Todd had underpaid: (1) Thompson during the period between January 7, 1984, and November 15, 1985; (2) Johnson during the period between April 7, 1985, and September 3, 1985; and (3) Kimbal Lewis, another employee, during the period between November 22, 1985, and January 4, 1986. Therefore, all of those claims were timely when DOL brought them before the ALJ in April 1989. Furthermore, after the ALJ's decision became final, the limitations statute allowed DOL at least one more year to file its Section 354(b) action in district court.

However, under the facts of this case, DOL sat on its rights for more than one year, between July 24, 1989, when the appeals period expired, and May 14, 1991, when the agency filed its Section 354(b) action in federal district court. Consequently, the only back wages that DOL could still hope to recover on behalf of Todd's allegedly underpaid employees were those that had accrued after May 14, 1985, within six years of the date that the federal court complaint was filed. According to DOL, Todd underpaid Thompson by $3,337.47 on Contract No. 48160 during the eight weeks between July 7 and August 31, 1985. Those numbers are not affected by the limitations statute. However, the record also shows that, according to DOL, Todd underpaid his employees on Contract No. 48115 as follows:

| EMPLOYEE | UNDERPAYMENTS BETWEEN 1/84 & 5/14/85 | UNDERPAYMENTS AFTER 5/14/85 | TOTAL UNDERPAYMENTS |
|---|---|---|---|
| Thompson | $12,725.23 | $ 4,626.99 | $17,352.22 |
| Johnson | 928.32 | 5,628.00 | 6,556.32 |
| Lewis | n/a | 1,087.83 | 1,087.83 |
| TOTALS | $13,653.55 | $11,342.82 | $24,996.37 |

Because the DOL brought its Section 354(b) action more than one year after the ALJ's decision became final, all alleged underpayments by Todd before May 14, 1985— that is, more than six years before the date that DOL filed in federal court—became time-barred. Since the unpaid back wages and fringe benefits are collected by the Secretary on behalf of the wronged employees and are to be transferred by the government directly to the underpaid workers, 41 U.S.C. § 352(a), the record shows that the Secretary's extended delay in this case caused Hubert Thompson to lose $12,725.23 and Mary Johnson to lose $928.32. Thus, Todd has reaped a windfall of $13,653.55, comprising more than 48% of the $28,333.84 judgment that ALJ Clarke had awarded the Secretary and the underpaid employees in June 1989.

Furthermore, our review of the rather complex record reveals a possible mathematical error in the Secretary's present claim. All parties agree that the United States Postal Service already withheld from Todd $2,789.49 in payments that it had owed him

for services rendered. That is the reason the government sought only $25,544.35 when it originally filed its Section 354(b) action in federal district court, rather than the $28,333.84 in underpayments set out above at page —— ($3,337.47 on Contract No. 48160 plus $24,996.37 on Contract No. 48115). Later, when the Secretary realized that the limitations statute had run on large amounts of the award, he reduced his request to $14,680.29. That amount represented the $3,337.47 that Thompson had been allegedly underpaid on Contract No. 48160, and the $11,342.82 that Thompson, Johnson, and Lewis had been allegedly underpaid on Contract No. 48115 during the period after May 14, 1985. Indeed, in his brief to this court, the Secretary repeats his request for $14,680.29. Brief for the Plaintiff–Appellant at 9. However, amidst this interplay of numbers, the Secretary has overlooked the $2,789.49 that the United States Postal Service had previously withheld from Todd and had deposited in an account earmarked for the underpaid employees. Consequently, it may be that the Secretary's remaining claim against

Todd cannot exceed $11,890.80, plus costs and interest.[7]

## IV

The facts of this case are troubling. A truck driver who learned from his employer, shortly after undergoing brain surgery, that the company had discontinued payments on employee health insurance without telling anyone, has lost $12,725.23 because of a federal agency's inattention to an important legal detail. A second underpaid worker has lost nearly a thousand dollars. Todd has thus benefited significantly from the government's failure to pursue zealously the ALJ's judgment and award.

For the foregoing reasons, we REMAND the matter to the district court with instructions to conduct proceedings consistent with this opinion with respect to the government's Section 354(b) action.

---

7. Because the matter is not before us, we do not express an opinion as to whether the ALJ's findings of April 26, 1989, are supported by the preponderance of the evidence, which would make them conclusive upon the district court.